[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12594
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 25, 2011
JOHN LEY
CLERK

D. C. Docket No. 1:09-cr-20672-WMH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDDIE LEE HUDSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 25, 2011)

Before TJOFLAT, BARKETT and ANDERSON, Circuit Judges.

PER CURIAM:

Eddie Lee Hudson appeals his convictions for possession of a firearm by a

convicted felon, possession of crack cocaine, and possession of a firearm during a drug trafficking offense, in violation of 18 U.S.C. §§ 922(g)(1) and 924(c), and 21 U.S.C. § 841(a)(1). Hudson argues that the district court erred in allowing the government to exercise three of its six peremptory challenges during jury selection to exclude black jurors, in violation of the Supreme Court's decision in Batson v. Kentucky, 476 U.S. 79 (1986).

## DISCUSSION[1]

The Equal Protection Clause prohibits the government from using peremptory challenges to exclude potential jurors on account of their race. Batson, 476 U.S. at 89. The resolution of a Batson objection involves a three-step, burden-shifting inquiry. United States v. Houston, 456 F.3d 1328, 1335 (11th Cir. 2006). First, the defendant must set forth a prima facie case that discriminatory animus motivated the government's peremptory strikes. Id. Second, once the prima facie case is established, the burden shifts to the government to provide a race-neutral reason for its exercise of the peremptory strikes. Id. Third, the burden shifts back to the defendant to establish that the government's stated reasons are a mere pretext for discrimination. Id. at 1338. Where the district court elicits non-discriminatory reasons for the exercise of the peremptory strikes and rules on the

---

[1] We review a district court's ruling on a Batson challenge for clear error. United States v. Houston, 456 F.3d 1328, 1334 (11th Cir. 2006).

2

ultimate issue of discrimination, the first step of the <u>Batson</u> inquiry is rendered moot and we review only "the prosecutor's articulation, and the judge's acceptance, of the stated justifications of the strikes." <u>Houston</u>, 456 F.3d at 1336.

The venire in this case consisted of forty-seven potential jurors, five of whom were black. Of the five black potential jurors, one ultimately was selected to serve on the jury that convicted Hudson. The government used peremptory challenges to strike three of the black members of the venire—Jurors 3, 15 and 42. Hudson objected to each of these strikes on the ground that they violated <u>Batson</u>. In response, the government explained that it wished to strike Juror 3 because she seemed equivocal as to whether her religious views would affect her ability to render a guilty verdict, and that it wished to strike Jurors 15 and 42 because they had several family members with prior felony convictions. The court permitted the government to exercise these strikes and excluded Jurors 3, 15 and 42 from the jury.

Because the district court here elicited non-discriminatory reasons from the government and ruled on the issue of discrimination, we review only the district court's application of the second and third steps of <u>Batson</u>. We thus begin by evaluating the legitimacy of the race-neutral reasons articulated by the government in support of its exercise of peremptory strikes. The government's explanation for

3

a strike need not be "persuasive, or even plausible; so long as the reason is not inherently discriminatory," it suffices. Rice v. Collins, 546 U.S. 333, 338 (2006) (internal quotations omitted). This Court has found both of the justifications articulated by the government here to be facially legitimate, race-neutral reasons for exercise peremptory strikes. See Houston, 456 F.3d at 1337 (holding that family criminal history is a facially legitimate, race-neutral justification for exercising peremptory strike); United States v. Blackman, 66 F.3d 1572, 157 (11th Cir. 1995) (finding no Batson violation where prosecutor struck juror who stated that his religious beliefs would impair his ability to render judgment in a criminal case). Accordingly, the district court did not err in concluding that the government had articulated legitimate, race-neutral explanations for the disputed peremptory strikes.

Moving on to the third step of the Batson inquiry, we must next evaluate whether Hudson has demonstrated that the government's stated reasons were a mere pretext for discrimination. The government's articulated reason for striking Juror 3 was that she made equivocal statements in response to a question about whether she held religious beliefs that might impair her ability to return a guilty verdict of guilty. In support of his argument that this articulated reason was mere pre-text, Hudson asserts only that if the government believed her answer was

4

equivocal, it should have further questioned the witness to clarify her beliefs. According to Hudson, we can infer discriminatory intent from the government's failure to ask Juror 3 additional questions on this topic. However, Hudson points to nothing in the record indicating that we should infer such an intent. Indeed, the prosecutor challenged for cause at least one other juror who stated with more certainty that her religious beliefs might affect her ability to find someone guilty. Without more to support the inference Hudson would have us draw, we cannot say that the district court clearly erred in crediting that government's race-neutral explanation for the exercise of its peremptory strike.

As to Jurors 15 and 42, Hudson argues that, even if it is facially legitimate to strike a juror based on family criminal history, we should infer purposeful discrimination because crime affects blacks more than whites. While this Court has recognized that a district court may, under certain circumstances, construe the government's reliance on criminal history as circumstantial evidence of discriminatory intent, a district court is not required to draw that conclusion. Houston, F.3d at 1328. Hudson provided no independent evidence to suggest that the government's reliance on the jurors' family criminal history was a mere pretext for discrimination. Hudson does not argue on appeal, nor did he at trial, that Jurors 15 and 42 were treated differently than similarly situated non-black venire

members, nor does he point to anything in the government's questions themselves to suggest discriminatory intent. Moreover, the fact that at least one black venire member was selected to serve on the jury undermines Hudson's assertion that the government was motivated by racial animus. United States v. Puentes, 50 F.3d 1567, 1578 (11th Cir. 1995). Thus, on this record, we cannot say the district court erred in concluding that Hudson failed to satisfy his burden of demonstrating that this reason was mere pretext for discrimination.

**AFFIRMED.**